With that, we'll hear argument in the first case, Garcia-Garcia v. Mukasey. Good morning, Your Honors. My name is James Todd Bennett. I represent the petitioner, Jesus Garcia-Garcia, and I'd ask to reserve two minutes of time for rebuttal. There's essentially five issues in front of the court. However, they all sort of dovetail into the – all seem to fold into the issue of whether the 1160A2A application and its operative effect in this particular case where you have a deportable but not excludable offense. First issue is going to, I believe, is the standard of review, which I think collapses into the very issue at hand in terms of the substantive issue. Second issue being the effect of the statute. And then, in addition, alternative arguments as to the – whether the construction is ultra-virus or there is a due process violation as a result of the construction as between an adjustment under 1255A under the old Act and this 1160 SAW application. As to the standard of review – Let me jump ahead, if you don't mind. One of the cases that seems to have a lot of impact here is Perez-Enriquez. Tell me why that doesn't preclude most of your arguments. Okay. Perez-Enriquez addresses a very unique – not a unique situation, I think a rather commonplace situation under this statute. We have an inadmissible alien who essentially is admissible at the time of his temporary residency. The holding of that case is very clear.  He thereafter gets convicted of an excludable offense, which is also a deportable offense, and then subsequently he is charged after the automatic adjustment, the so-called automatic adjustment under the SAW statute. He's charged with removability based on his excludable and deportable offense, but as being inadmissible at the time of entry. So it's a question of admissibility. Our problem in this case with firearm offense under this statute is not an inadmissible offense. That distinguishes it immediately from the situation in Perez-Enriquez. Now, if there is an admission, he would be admissible whether there was a firearm offense before or after the temporary residency, so it doesn't have the same effect in terms of inadmissibility at the time of the original application. Subsequently, we have the problem of the operation of the waiver statute. This is a type of a conviction that's completely excluded from there's two ways to look at it, actually, under the 1160A2, excuse me, A3 statute for terminating the alien's temporary residency status. First, we have the statute that says you terminate the status based on the whether or not he's deportable. If you make a finding he's deportable, then okay, that's the end of it. His temporary residency is terminated. On the other hand, there's a whole laundry list of offenses that will keep you from adjusting status. Perez-Enriquez's problem is that he can't adjust. He would be inadmissible, not only inadmissible, but also could not adjust status under the statute. Now, Mr. Garcia's situation, he's got a conviction that does not bar that. It doesn't bar that, and it's either one of two ways of looking at it. It would be, number one, there's a built-in waiver to this statute by operation of the second of the adjustment under the B section where you get to the permanent residency, because it's not numerically precluded, it's not a felony, and it is not an inadmissible offense, or there's no allegation of fraud either. So without those four, one of those four operative factors, he would be entitled to the adjustment anyway. The same operation, now, there's either a built-in waiver or else the whole idea of a deportable but not excludable inadmissible offense, in other words, is just completely not contemplated by the statute. That's not inconsistent with 1255A, the standard adjustment statute. Roberts, how do you cope with the statement in Paris and Regas that says if the admissibility of an alien admitted under the SAW program is determined, et cetera, et cetera, and the alien status is thereafter automatically adjusted to lawful permanent residence without further inquiry into inadmissibility, here's the language, the government may institute removal proceedings against the alien, but the government must do so on the premise that the alien is a lawful permanent resident rather than that the alien is inadmissible. So how do you cope with that language? The government may institute removal proceedings against the alien. The difference for, in this particular case, is that he doesn't have – I'm probably going to repeat myself a little bit, but – I mean, hasn't Paris and Regas said you can institute – you can start removal proceedings against your client? You just have to grant that client additional protections because he's a lawful permanent resident? I would – under the construction of the statute and the nature of this particular offense, the adjustment under the B section has to have some effect. I mean, it just – it can't just – It does, and Paris and Regas says you get all kinds of additional protections that your status now entails. But Paris and Regas says, I won't repeat it, but removal proceedings may be in order. True, but under the operation of the statute with this kind of offense, which is an excludable – not an excludable offense as in Paris and Regas, there either has to be a termination of the temporary residency or he goes right through. He's not even affected by that second portion of the statute. So the – it's not just that it's an automatic adjustment as the Paris – I don't think it's Paris and Regas, but I think the administrative decision of Juarez Lopez says it's not only that, but he's going to go through anyway, no matter what. I mean, it's not something that's going to get caught in the winnow, even if they chose to exercise their gatekeeper functions, which they didn't. But the time of admission is the time of the granting of the temporary status, not the permanent status under SAW, according to Paris and Regas. So if you've granted admission, then the only remedy can be removal, right? I mean, you're not saying they're inadmissible. You're saying they're removable. True. Well, deportable in this case. Deportable, yes. That's true. But the problem is, again, this is a very unique kind of conviction. This is probably the only remaining conviction or classification that is both – is simply deportable, not excludable. So he's never been inadmissible, no matter when he's convicted of it. And it's not inconsistent with other statutes. Number one, it's not inconsistent with the 1255a old statute of adjustment, where this would never even be an issue. The classic example would have been drunk driving back when it was an aggravated felony. But this is the only remaining conviction that I am aware of, a firearms offense, that simply allows for adjustment no matter what. You don't need a waiver. You don't need anything. It goes right through. It can be considered the time of the adjustment. So in other words, if he was convicted before the temporary residency, it wouldn't matter if he was convicted unless he had additional qualifying convictions. If he's convicted in between, it doesn't matter. If he's convicted after, then he would have a problem. In other words, going through the system, this is one kind of conviction that doesn't get caught in the net. Everything else could be caught in the net, could have been acted on permissively by the attorney general, as they phrase it, although I would say it's more a question of discretion rather than permissiveness. And because of that, this is not an offense that has the same operative effect. You're down to about a minute 30. Do you want to reserve? I would, Your Honor. Thank you. Your Honor, good morning. Terry Skadron for the respondent. The central question before the court is whether Garcia is insulated from the immigration consequences of his firearms conviction, which clearly is a deportable offense because his status was later automatically adjusted to permanent resident under the SAW provision. And the board answered that negatively, said no, and its decision is entitled to Chevron deference. At the outset, I'd like to point out that the INA has many different statutory schemes for adjustment of status. But not one of them protects an alien from later removal proceedings if he commits a crime within the United States. Now, depending on his circumstances, he may be eligible for relief from removal, but certainly the charge can go forward. Now, here, the court is not writing on a clean slate because we submit that this case is Of course, you made the entirely opposite argument the government did in Perez Enriquez. That's correct. And the court rejected that argument, relying on the board's decision in matter of Jimenez, and we accept Perez Enriquez as controlling law here. Now, the result here is different than Perez Enriquez because of the nature of the deportation charge. In Perez, the alien was charged with being inadmissible at time of admission or adjustment of status. And the government, as Your Honor points out, argued that the adjustment that counted under SAW was the ministerial adjustment to lawful permanent resident status. And the court, relying on Jimenez, held no. The adjustment that counts is that initial adjustment when the inspection takes place. The government argued in that case it wasn't a ministerial adjustment, that it had real significance. We did argue that, and again, we lost on that issue. Honestly, I can't answer for the government's arguments in Perez Enriquez. In reviewing the case, I question why we did raise those arguments, but it's very clear under the law of this court and under an unbroken chain of authority in the board, the one that counts is temporary resident status. Here, the result's different. It's a bit odd, though. I mean, the way this works is a little bit odd because everybody, presumably, you see this conviction flung all the way through, and you wait, and you adjust status, and you get to the final adjustment and say, now we've got you. We can deport you. Well, the question is, does it come to the attention of DHS or then INS? Certainly, there is a mechanism for terminating the temporary resident status, but as this court's recognized, as the board recognized in matter of Juarez, that's a permissive scheme. The question here is, what happens if the government doesn't learn of the conviction and doesn't actually exercise its discretionary authority to terminate status? The alien can be placed in proceedings. Now, what happens next? I would say that Mr. Garcia's arguments go to the question of whether he's eligible for relief from removal, and we would agree. It's settled law with a firearms conviction. The alien's not inadmissible to the United States, and therefore, in the context of removal proceedings, potentially, he could apply for adjustment of status. That's, in this particular case, apparently, Mr. Garcia didn't have a basis for adjusting status after he was placed in removal proceedings, but that doesn't, that's really, you know, that's a case-specific scenario here. What's your position on repapering, then, in this case? Well, our initial position, I mean, as a threshold matter, repapering was never raised at any stage of the proceedings below, so we submit that the issue's not before the court, but repapering, as we argued in our brief, wouldn't have helped him. It is true that there's nothing in the record that I've seen that uses the term repapering, but if you read the relief that the petitioner's requesting, doesn't it inevitably have to involve a repapering process? Well, the relief he's requesting is termination of his proceedings, and I don't believe that his next argument is that, yes, he should have been placed in removal proceedings. No, he, I mean, what he talks about, to the BIA, I'm not, is a relief that, it seemed to me, in the alternative, could only be accomplished through repapering. So whether he labeled it repapering or not, it seemed to me that the issue was out there. In his brief, he says he appears to be eligible for relief under suspension because 10 years have elapsed since the commission of his deportable offense, so all the language that underlies repapering seems to be in his presentation to the BIA, even though that word, repapering, is not there. Yes, well, let's assume, for purpose of argument, that the repapering issue were here. Well, first, as a threshold matter, the issue of whether to repaper proceeding is something that is left to the prosecutorial discretion of INS or DHS. So let me stop you there. Taking that as a given, if repapering is alive, shouldn't we remand to allow the BIA to consider the argument? Under Ventura, you should exercise the discretion, not us. Well, Your Honor, INS has had an opportunity to exercise that discretion, but moreover, repapering would not help Mr. Garcia. He's argued that he would have been suspension eligible, but that's not the case because under the court's decision in RAM, his conviction for a firearms offense three years after his admission as a temporary resident would have cut off his physical presence time in the United States. He couldn't show the seven years, and he certainly couldn't show the years necessary for cancellation of removal. I'd like to address his point that his adjustment to permanent resident under the SAW provision is meaningless under the government's reading of the statute, and, Your Honor, that's not true. As the court pointed out in Perez-Enriquez, there are consequences to the adjustment because individuals in Mr. Garcia's position are treated as permanent residents in the removal proceeding. If he had a different kind of conviction, potentially he could have applied for 212C because there's no corresponding ground of inadmissibility. So that form of relief was knocked out. If he were in a different position in terms of his years of residency here, potentially he could have applied for cancellation if he were in removal proceedings, of course, as a permanent resident. There are different due process implications to permanent resident status. So it's not a meaningless adjustment, but the question here is not his eligibility for relief from removal. It is whether the deportation charges themselves can go forward, and every SAW case that the parties have cited supports the conclusion that an alien who commits a deportable firearms offense after being granted temporary residence under SAW may be placed in proceedings. And the automatic adjustment to permanent residence doesn't insulate him from the removal proceeding. What's your best explanation of the rational basis of the difference between the deportation exclusion provisions in this case? For, as a, yeah, okay, let me address that briefly. First, I just want to note that these aliens are not similarly situated because they're under different statutory provisions. There is a rational basis for treating them differently because under SAW, the inspection occurs at the time of adjustment to temporary resident and not at the time of adjustment to permanent resident. So if you're going to compare the two schemes, the general adjustment and the SAW adjustment, you should be comparing the temporary adjustment under SAW to LPR adjustment under 245. That is the appropriate point of comparison, and in that instance, the aliens are treated the same. And further, both categories of aliens are eligible for the same relief from removal. We're talking about whether they can be placed in the deportation proceeding. Counsel, I'm not sure I understand your argument that he's ineligible for repapering. Your argument is that because he was convicted, he couldn't accrue the amount of time that he would have needed? Well, yeah, that's an argument that repapering would not help him. In terms of whether he could follow that, though, because that depends on the operation of the stop time rule. That's correct. Repapering was intended to undo the stop time rule with respect to people who would be disadvantaged by it. It doesn't undo the stop time rule, in my understanding. The alien is still, what it does is open the door for applying for cancellation of removal, and for most aliens, what they're seeking is the more generous physical presence time under the non-LPR provision. I hear you saying that the stop time rule prevents him from accruing the amount of time he would need. Isn't that what the whole, what repapering was all about? Let me just quote you this from the Federal Register. Repapering is intended to benefit those aliens rendered ineligible for relief by AEDPA or the stop time rule. Al-Kharaz, eligibility for repapering is conditioned on aliens being disadvantaged by the retroactive stop time rule. It was. You're telling us that the stop time rule prevents him from being ineligible. Well, that would have been under, that category of aliens were ones who the statute is reaching back and they were suspension ineligible in deportation proceedings. They don't start accruing new physical presence time from the moment of repapering. There is some case law on that, I believe, which we can cite to the court after argument if it would be helpful. But at bottom, the decision whether to repaper a case is something left to INS's prosecutorial discretion. We don't know if there were negotiations over that outside of the removal proceeding in this case. And we submit that that would not be an appropriate basis for remand here. Particularly since our position is still that there is no mention of repapering in the record of this case. Isn't that contradictory to your supposition? There might have been discussions about it. There was nothing in the record here. I don't know whether there was consideration of it outside of the context of the removal proceeding itself. But really, when he's talking about suspension, it's difficult to conceive of suspension without repapering in this context. Wouldn't you agree? When he's asking for the relief of suspension of deportation, the only way you can get to that is repapering, right? Well, his explicit argument to the Court is that he shouldn't be in removal proceedings at all, that he's not deportable because he adjusted. And that, we submit, is the issue before the Court, and that is one that has to be resolved in the government's favor here. Thank you. Thank you for your argument. Put on two minutes for rebuttal. Yes, Your Honor, just briefly. The going through the potential relief here on a Ventura-type remand, futility underscored and is underscored in this case because he's adjusted status. Now he's being asked to readjust status. Certainly he can, the gun is in a bar, but that goes in to underscore the exclusion excuse me, the exclusion of deportability under this particular statute as a bar. Secondly, go ahead. Do you think that repapering would afford a reasonable opportunity for your client to get relief? I mean, is this just, you seem to be implying here that it's just futile anyway. Is it or not? No, absolutely not. Why wouldn't it be futile? If the repapering retriggers the statute, he's a 1254A2 at this point in history, which is 10 years from the date of the removable offense. So even if the government prevailed on its argument that this wasn't, didn't adjust away under the 1160, he's still got 10 years running time from there and he'd be entitled to apply for a suspension under the old statute since he is in fact in deportation. Secondly, under Gabrielski, I don't think he even has to go to Gabrielski at this point. Any readjustments that might be available to him, he certainly would be entitled to take advantage of at this point. So there are those forms of relief out there. But again, without waiving the argument that that would be underscoring the whole problem of the futility doctrine as applies to this statute, which is raised in Rainford in the administrative decisions. Then finally, the last point I'd like to make here. So I think that, in other words, a Ventura-type remand would be appropriate here under the circumstances. I find it passing strange that Perez Enrique's very significant health and safety code violation is entitled to relief under this particular statute. But whereas this simple possession of a legal firearm in an unlawful manner results in a rather egregious result, but that's neither here nor there. It's just an observation. Finally, there's a C-2 waiver which underscores the excludability issue under the 1160 statute. It addresses only the ---- it specifically says that excludable convicted aliens aren't entitled to a waiver, but it doesn't say anything about deportable aliens. Again, underscoring the fact that this kind of conviction wasn't even contemplated by Congress going through this particular procedure. And then finally, it's not inconsistent with the other forms of adjustment that exist under the INA at that time, including the Marriage Fraud Act, which is incremental. And I would submit that where this offense is not one that's contemplated by Congress going through this particular winnowing process, if you will, under the 1160 statute, certainly would ---- it's not inconsistent with these other forms of incremental adjustments that all steps need to be completed before you're a lawful permanent resident under these circumstances as opposed to an excludable alien. I believe my time's up. I'm not sure. Do you have an attempt to re-paper in this case that we don't know about? There was not at the ---- there was ---- I just can't remember, Your Honor. It was quite some time ago. I don't ---- I know in the record there's nothing. I've gone back through the record to look for that particular issue. Okay. Thank you for your argument. Thank you, Your Honor. Please submit it. Gonzales-Rios has been moved to Thursday. And the next case on the oral argument calendar is United States v.
judges: Ferguson, Trott,thomas